Adam S. Kopchian, Esq.
**Attorney ID: 5181540**
Kopchian Law
299 Broadway Suite 203
New York, NY 10007
O: 212.625.1001
D: 917.806.7829
kopchianlaw@gmail.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINGQI YANG**<br>Petitioner<br><br>-Against-<br><br>**KENNETH GENALO,** Director of New York Immigration and Customs Enforcement [hereinafter 'ICE']<br><br>**MARKWAYNE MULLIN**, Secretary of Homeland Security; AND<br><br>**TODD BLANCHE,** Attorney General of the United States<br>Defendants | Case No.:<br><br>Agency No.: A 209-469-134<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Lingqi Yang [hereinafter 'Mr. Yang'], is a citizen and national of China who identifies as a Christiain. He fears persecution by the Chinese government based on his religion.

2. Mr. Yang entered the United States on January 6th, 2016 and subsequently filed an affirmative asylum application with USCIS on November 21st, 2016. **Exhibit A**. He was subsequently fingerprinted for his asylum application in December of 2016. **Exhibit B.**

3. Mr. Yang's asylum application remained pending for over 9 years before the asylum

office scheduled him for his interview.

4. Mr. Yang was initially scheduled to appear at an asylum interview on March 31st, 2026. However, Counsel herein asked to reschedule his interview since he needed time to prepare Mr. Yang for his interview. **Exhibit C**. Mr. Yang was previously represented by Mr. Albert S. Lefkowitz, Esq. However, Mr. Lefkowtiz had previously passed away in October of 2023. **Exhibit D**.

5. USCIS then rescheduled Petitioner for an asylum interview on August 18th, 2026. **Exhibit E**. Petitioner then appeared at the interview with evidence in support of his claim. When Petitioner attended the interview believing USCIS was going to review his claim, Respondents detained Mr. Yang and may potentially transfer him out of the Eastern District of New York so that he may be rapidly deported under a separate and inapposite section of law codified in 8 U.S.C. 1225. Respondents act, not due to Petitioner's personal circumstances or individualized facts., but due to the Board of Immigration Appeals novel legal interpretation that any non-citizen who is present in the United States without admission is ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I&N 216 (BIA 2025).

6. As a result, Petitioner has been deprived of his liberty without any individualized determination as to why detention is appropriate by the agency. Because the agency and immigration courts have acceded to this interpretation that noncitizens who enter without inspection must be mandatorily detained, only this Court can remedy the violation of his constitutional rights. Although the Second Circuit has issued its own opinion on matters regarding the mandatory detention of noncitizens within the United States that have been detained by ICE, *see Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the matter is on

appeal and may not be followed by Respondents.

7. Petitioner's detention will and has caused harm to the Petitioner, his family, and children. *See* **Exhibits F** and **G**. Accordingly, the Petitioner respectfully asks this Court to find that the Respondent's detention and intention to potentially transfer him is arbitrary, capricious, and in violation of the law. Petitioner, through Counsel, therefore respectfully asks this Honorable Court to issue an order preventing Petitioner's transfer out of this district and grant the instant petition for a writ of habeas corpus.

8. Since Petitioner is detained and is unable to sign on his own behalf, Counsel signs on Petitioner's behalf.

## JURISDICTION

9. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner was properly ordered removed under 8 U.S.C. § 1225(b)(1).

11. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

12. Venue is proper because at the time of filing, Petitioner was detained at the Bethpage Asylum Office located at 1065 Stewart Avenue, Suite 200, Bethpage, NY 11714. He appears to be currently held at a holding location in Central Islip. As such, the location is

within the jurisdiction of this District. *See Rumsfeld v. Padilla,* 542 U.S. 426, 441 (2004) (citing *Ex Parte Endo*, 323 U.S. 283 (1944)).

13. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to his claims occurred in this District.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

14. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

15. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

16. Petitioner is lawfully present as an applicant for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner was detained by ICE at the Bethpage Asylum Office located at 1065 Stewart Avenue, Suite 200, Bethpage, NY 11714. Upon information and belief, Counsel believes that he is currently being held in Central Islip by Respondents or their agents.

17. Respondent, Kenneth Genalo, is named in his official capacity as the Director of New York Immigration and Customs Enforcement. In this capacity, he is responsible for managing internal immigration enforcement, detention, and deportation programs across the New York area. As such he is responsible for the transportation, detention, and physical deportation of individuals to their country of origin and citizenship. Respondent, Kenneth Genealo's address is US Immigration and Customs Enforcement, New York Field Office, 26 Federal Plaza 9th Fl Suite 9-110, New York, NY 10278.

18. Respondent, Markwayne Mullin, is named in his official capacity as the Secretary of Homeland Security. In this capacity he is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Eastern District of New York; is legally responsible for pursuing any effort to detain and remove Petitioner; and as such is a custodian of Petitioner. Respondent Markwayne Mullin's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-04855.

19. Respondent, Todd Blanche, is named in his official capacity as Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

## LEGAL FRAMEWORK

20. The Refugee Act of 1980, the cornerstone of the U.S. Asylum system, provides individuals with the right to apply for asylum as a way of seeking safety in the United States. The purpose of the Refugee Act is to enforce the 'historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands.' Refugee Act of 1980, 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980).
21. The Refugee Act reflects a legislative purpose "to give 'statutory meaning to our national commitment to human rights and humanitarian concerns.'" *Duran v. INS*, 756 F.2d 1338, 1340 n.2 (9th Cir. 1985).
22. The Refugee Act established the right to apply for asylum in the United States and defines the standards for granting asylum. It is codified in various sections of the INA.
23. The INA gives the Attorney General or the Secretary of Homeland Security discretion to grant asylum to noncitizens who satisfy the definition of 'refugee.' Under that definition, individuals are generally eligible for asylum if they have experienced past persecution or have a well-founded fear of future persecution due to race, religion, nationality, membership in a particular social group, or political opinion and if they are unable or unwilling to return to and avail themselves of the protection of their homeland because of that persecution or fear. 8 U.S.C. § 1101(a)(42)(A).
24. Although the grant of asylum is discretionary, the right to apply is not. The Refugee Act broadly affords a right to apply for asylum to any non-citizen "who is physically present in the United States or who arrives in the United States [.]" 8 U.S.C. § 1158(a)(1).
25. Because of the stakes involved in asylum applications, the right to apply is robust. It includes the right to counsel, at no expense to the government, *see* 8 U.S.C. §§ 1229a(b)(4)(A), 1362, and the right to access information in support of an application.

*See* 8 U.S.C. § 1158(b)(1)(B)(placing the burden on the applicant to present evidence to establish eligibility).

26. Noncitizens seeking asylum are guaranteed Due Process under the Fifth Amendment to the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

27. Noncitizens who are affirmative applicants for asylum are entitled to a review of their application by a USCIS officer when the application is within USCIS's jurisdiction. *See* 8 C.F.R. § 208.9(a). The interview is meant to be conducted in a nonadversarial manner and apart from the general public. *Id.* at (b). The purpose is to elicit all relevant and useful information bearing on the applicant's eligibility for asylum. *Id.* Applications may, in the alternative, may be referred to an immigration judge without an interview in limited instances where the applicant is barred from a grant of asylum, does not merit a grant as a matter of discretion, or is not eligible on the merits of the claim. *Id.* at (a)(2).

28. If referred, affirmative asylum applicants may renew their applications before the Immigration Court. They may also seek administrative appellate review before the Board of Immigration Appeals if an immigration judge enters an order of removal against them. 8 U.S.C. § 1252(a) *et. seq.*

29. In 1996, Congress created 'expedited removal' as a truncated method for rapidly removing noncitizens from the United States with very few procedural protections. 8 U.S.C. § 1225(b)(1). Because of the few procedural protections, expedited removal only applies to noncitizens who are inadmissible to the United States because they engaged in fraud or misrepresentation to procure admission or other benefits, 8 U.S.C. § 1182(a)(6)(C), or who are applicants for admission without required documentation. 8 U.S.C. § 1182(a)(7). No other person may be subjected to expedited removal. 8 C.F.R. §

235.3(b)(1), (b)(3).

30. As such, for decades that followed, non-citizens who were not deemed 'arriving' were entitled to custody hearing before an immigration judge or other hearing officer. *See* 8 U.S.C. § 1252(a)(1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996)(noting that 1226(a) simply 'restates' the detention authority previously found at 1252(a)).

31. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

32. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claimed that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

33. On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

34. Since Respondents adopted their new policies, dozens of federal courts nationwide have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

35. Recently in *Da Cunha v. Freden*, the Second Circuit determined that the government's provisions regarding mandatory detention applies to individuals who are apprehended at

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

the border or shortly thereafter. 175 F.4th 61, 70 (2d Cir. 2026). It does not apply to individuals already in the United States who are not a flight risk nor danger to the community. *Id.* Rather, those individuals are eligible for bond pending the outcome of their removal proceedings pursuant to 8 U.S.C. 1226(a). *Id.*

36. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

37. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

38. Exhaustion of administrative remedies is not required where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003).

39. Therefore, Petitioner is not required to exhaust administrative remedies because Petitioner was detained pursuant to an ICE policy that is defined by its systematic denial of administrative relief and exhaustion would be futile. In addition, exhaustion is not required because Petitioner raises substantial constitutional questions that cannot properly be adjudicated administratively.

## FACTUAL BACKGROUND

40. Petitioner is a national and citizen of China. He is not a citizen or national of any other

country.

41. Petitioner entered the United States without inspection on January 6th, 2016 by crossing the United States Canadian border by boat. He was not stopped by US Immigration Officials at the time he entered the United States.

42. Petitioner filed an affirmative asylum application with USCIS on November 21st, 2016. He was subsequently scheduled for and took fingerprints in December of 2016. After taking fingerprints, Petitioner's Form I-589 Application for Asylum remained pending with USCIS until the Respondents scheduled him for an initial interview on March 31st, 2026.

43. Petitioner, through Counsel, indicated that he would need to reschedule his interview because his prior Counsel had passed away and needed time to prepare.

44. Respondents then rescheduled Petitioner for his interview on August 18th, 2026. Petitioner attended the interview and planned to submit additional evidence in support of his claim. He believed he was going to be interviewed on that day. Instead, Respondents detained Petitioner at the Bethpage Asylum Office. To Counsel's knowledge, Petitioner is being held by Respondents at a location in Central Islip.

45. Respondents did not consider Petitioner's individual circumstances when detaining Petitioner at his asylum interview. He is not a flight risk as he voluntarily appeared for his interview and believed he would be questioned about his claim. He also has and takes care of minor children. The two children in his care suffer from ADHD and are presently having difficulties adjusting to the sudden loss of Petitioner's presence. *See* **Exhibit F**.

**CLAIMS FOR RELIEF**

**<u>CLAIMS FOR RELIEF</u>**

**COUNT ONE**

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION SUBSTANTIVE DUE PROCESS

46. The allegations in the above paragraphs are re-alleged and incorporated herein.

47. Petitioner is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

48. The government's ongoing detention of Petitioner is unjustified and unlawful.

49. The Fifth Amendment requires that detention be "reasonabl[y] relat[ed]" to a valid governmental purpose. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Immigration detention during the pendency of removal proceedings is authorized by statute for the purpose of mitigating flight risk and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

50. The goals of immigration detention are to "ensur[e] [his] appearance ... at future immigration proceedings," and to "[p]revent[] danger to the community." *Zadvydas*, 533 U.S. at 690. Neither goal is served by Petitioner's detention.

51. Petitioner was detained by ICE at his asylum interview being conducted at the Bethpage Asylum Office. He appeared voluntarily expecting to be asked questions about his underlying asylum claim. This demonstrates that there was no need for detention to ensure his presence at any USCIS appointments or interviews. His presence at his interview showed his intent to pursue his claim and comply with any directives issued by Respondents.

52. Moreover, his detention jeopardizes his ability to gather the evidence needed to pursue relief.

53. The Due Process Clause guarantees detained immigrants the right to be detained in a safe situation, free from punitive conditions of confinement. *See* U.S. Const. amend. V.

54. Respondents' failure to adequately protect Petitioner from these punitive conditions, or release him from detention altogether, violates his due process rights.

55. Petitioner has no adequate remedy at law, as he seeks immediate release and is ineligible for bond pursuant to *Matter of Yajure Hurtado*.

56. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

**COUNT TWO**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION PROCEDURAL DUE PROCESS**

57. The allegations in the above paragraphs are realleged and incorporated herein.

58. Petitioner is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

59. The Procedural Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of a protected interest without notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

60. Under *Mathews*, courts balance: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. 424 U.S. at 335.

61. Petitioner asserts "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

62. The risk of erroneous deprivation of Petitioner's liberty interest is enormous. Respondents provided Petitioner with no notice or opportunity to be heard either prior to arresting and detaining him or thereafter. He has been provided with no pre-deprivation or post-deprivation process whatsoever, and Respondents have made no showing that he is a danger to the community or a flight risk. Where *no* procedures are in place to ensure that detention bears a reasonable relationship to the valid governmental purposes described in *Zadvydas*, a violation of procedural due process is inexorable.

63. By the same token, the Government has no legitimate interest in detaining Petitioner absent a valid purpose or reasonable relationship to preventing danger to the community or ensuring his appearance at future hearings.

64. Petitioner has no adequate remedy at law, as he seeks immediate release and is ineligible for bond pursuant to *Matter of Yajure Hurtado*. Although the 2nd Circuit has issued its own decision in *Da Cuna v. Freden*, there is no guarantee Respondents will follow the decision since it is presently under appeal by the Respondents.

65. Petitioner's detention thereby deprives him of his rights to Due Process under the Fifth Amendment of the United States Constitution.

## COUNT THREE
## VIOLATION OF THE INA

66. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

67. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of

inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

68. The application of § 1225(b)(2) to Petitioner purports to unlawfully mandate his continued detention and violates the INA.

**COUNT FOUR**
**VIOLATION OF THE BOND REGULATIONS**

69. Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

70. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

71. Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy and practice of applying § 1225(b)(2) to individual like Petitioner.

72. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## COUNT FIVE

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

73. The allegations in the above paragraphs are realleged and incorporated herein.

74. The Administrative Procedure Act prohibits agency action that is arbitrary and capricious. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

75. Respondents' arrest policy, whereby it indiscriminately detains individuals present in the U.S. irrespective of the individual circumstances in their case is arbitrary and capricious, causing individuals, like the Petitioner, to be detained even though they do not pose a danger to the community nor a flight risk.

76. Petitioner has no other adequate remedy at law.

77. By detaining Petitioner without any consideration of individualized facts and circumstances, and without explaining the reasons for their abrupt shift in policy, Respondents have violated the APA.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition

should not be granted within three days;

(3) Declare that Petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;

(4) Issue a Writ of Habeas Corpus ordering REspondents to either release the Petitioner from custody or at least afford Petitioner an opportunity to apply for and post bond;

(5) Issue an Order prohibiting the Respondents from transferring Petitioner from the District without the Court's approval; AND

(6) Grant any further relief this Court deems just and proper.

Dated: August 18th, 2026

Adam S. Kopchian, Esq.
**Attorney Id: 5181540**
**Kopchian Law**
299 Broadway Suite 203
New York, NY 10007
O: (212) 625.1001
D: (917) 806.7829
kopchianlaw@gmail.com
*Attorney for Petitioner as Next Friend*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINGQI YANG**<br>Petitioner<br><br>-Against-<br><br>**KENNETH GENALO,** Director of New York Immigration and Customs Enforcement [hereinafter 'ICE']<br><br>**MARKWAYNE MULLIN**, Secretary of Homeland Security; AND<br><br>**TODD BLANCHE,** Attorney General of the United States<br>Defendants | Case No.:<br><br>Agency No.: A 209-469-134<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## COUNSEL'S DECLARATION

I, Adam S. Kopchian, Esq., pursuant to a Writ for Habeas Corpus under 28 U.S.C. 2241 declare the following:

1. My name is Adam S. Kopchian, Esq. I am the Petitioner's Counsel in his affirmative asylum application. Since Petitioner is detained and is unable to sign a petition on his own behalf, Counsel is signing on his behalf.
2. The information contained in the Petition is based on Counsel's representation of Respondent, **Exhibits Tabbed A** thru **G**, including the Affidavit of Petitioner's girlfriend.
3. The copies of **Exhibits Tabbed A** thru **G** are true and correct copies of documents submitted in support of the Petition for a Writ of Habeas Corpus.

Dated: August 18th, 2026

Respectfully submitted,

Adam S. Kopchian, Esq.
*On Lingqi Yang's behalf as Next Friend*